UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MARK JOSEPH UHLENBROCK<br><br>Defendant. | CRIMINAL NO. SA-21-CR-00084-XR<br>CRIMINAL NO. SA-16-CR-00389-XR |

### UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM AND MOTION FOR UPWARD VARIANCE

*"I think about you and what I have done every waking hour of every day. I more than embarrassed you. I humiliated you. I caused you to be fearful. I have affected your social life. I affected your motivation to go to work…It is the terrible nature of my addiction."* These were the words of Defendant Mark Uhlenbrock on September 28, 2016, just before this Court sentenced him to 41 months in prison for cyberstalking his ex-girlfriend. Less than four years later, while still on supervised release, Defendant began a new cyberstalking campaign against the same victim, leading to a second federal prosecution. A jury found him guilty, and Defendant is again before the Court for sentencing. The Court should hold Defendant accountable for the nightmare he has created for his victim by imposing a guidelines sentence of 60 months in Cause No. 21-CR-00084-XR and varying upward to a sentence of 24 months in Cause No. 16-CR-00389-XR, to run consecutively for a total sentence of **84 months in prison**.

### I. BACKGROUND

Since at least 2006, Defendant has persisted in posting sexually explicit photographs and erotic stories of his victim, Y.T., on Internet websites, along with personal identifiers such as her

1

first and last name, occupation, employer, and city and state of residence. At that time, Defendant was a pilot for a major commercial airline. Y.T., a flight attendant, entered into a relationship with Defendant. After learning Defendant was posting sexually explicit photographs of her on the Internet, Y.T. ended their relationship.

That was only the beginning of Defendant's obsession. Defendant continued posting nude images of Y.T. online. Y.T. sued Defendant in Bexar County civil court on three different occasions from 2009 to 2011. The first time, a court ordered Defendant to pay damages to Y.T. and issued a permanent injunction enjoining Defendant from ever publishing or disclosing photos of Y.T. on the Internet. After Defendant continued the postings, Y.T. filed a second suit, which settled when Defendant agreed to pay damages. When Defendant's activity continued, Y.T. filed a third suit, leading to Defendant again agreeing to pay damages to Y.T. in a settlement contract. The contract reiterated the permanent injunction against Defendant.

Defendant did not stop. When Y.T. learned the nude photographs were still being posted online, she contacted the Federal Bureau of Investigation in San Antonio. The FBI investigated and identified Defendant as the poster. Defendant pled guilty to stalking Y.T. in federal court on June 16, 2016—a decade after Y.T. first learned of Defendant's activities. *See United States v. Uhlenbrock*, 16-CR-00389-XR, Dkt. No. 35. This Court sentenced Defendant to 41 months in prison, the top of the applicable guideline range. *Id.*

After serving his prison sentence, Defendant was released on federal supervision. In November 2018, the U.S. Probation Office conducted a home visit to Defendant's residence and found an unapproved computer, in violation of his conditions of release. A forensic analysis of devices confiscated from Defendant's home revealed intimate photos and videos of Y.T., and that Defendant had been searching for these images. *Id.*, Dkt. No. 54 at 12. Further analysis showed

Defendant had Googled "how to wipe hard drive clean."

Defendant was arrested for violating the terms of supervised release. At sentencing for his revocation on April 3, 2019, this Court admonished Defendant that he needed to forget about Y.T. *Id.* at 13. The Court sentenced Defendant to 6 months in prison, followed by 3 years of supervised release. *Id.*, Dkt. No. 53. As special conditions of release, this Court ordered Defendant to participate in sex offender treatment and not access the Internet without prior approval from the probation office. *Id.* Defendant served his prison sentence and restarted supervised release on August 8, 2019. *Id.*, Dkt. No. 55.

But Defendant's vendetta against Y.T. was not finished. In June 2020, Y.T. learned that the images and posts about her were back online. She took off from work and spent hours every day scouring the Internet. Y.T. found the posts and learned they were accompanied by even lengthier and more graphic fantasy stories written about her. Y.T. feared for her safety because of personal identifying information about her that was included in the posts.

Y.T. again contacted the FBI. The FBI investigated and tracked the posts back to Defendant. At the time of the FBI's investigation, at least one of Defendant's posts had been available online for nearly two weeks. Defendant was indicted federally for Internet stalking, based on the new conduct ranging from May 2020 to September 2020. *See United States v. Uhlenbrock*, 21-CR-0084-XR, Dkt. No. 1. Defendant proceeded to trial, and the jury found him guilty.

## II. ARGUMENT

For years, Defendant has weaponized the Internet to try and destroy one woman's life. His campaign against her is a personal one. Defendant publishes not only nude photographs of the victim, but private details about her. He posts not only graphic captions about the victim, but sexual stories falsely written from her perspective, inviting strangers to seek her out when they fly.

3

Defendant knows the substantial emotional distress he causes—but he does it anyway, to exert power over his victim and keep Y.T. in his life permanently. His conduct is getting worse, and a total sentence of 84 months is necessary to address the gravity of Defendant's actions and protect Y.T. from Defendant's future crimes.

### A. Defendant should be sentenced to 60 months for his new Internet stalking case.

Defendant's total offense level is 22 and his criminal history category is III. The guideline range is 51 to 63 months, but the cyberstalking statute is capped at a statutory maximum of 60 months. The United States requests a sentence of 60 months on the new case, considering factors such as the nature and circumstances of the offense, and the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a).

The nature and circumstances of the offense are particularly egregious, given how long Y.T. has suffered by Defendant's hand. The worst part of a cyberstalking crime is that the damage can never really be undone. Y.T. will live her life wondering if her images and information are still on the Internet. With the click of a mouse, Defendant stole Y.T.'s peace of mind, forever tying her name and likeness to pornographic websites.

Defendant is a man in charge of his actions. He served in the military. He was a successful commercial airline pilot, responsible for flying thousands of people around the world. Defendant carefully selects the facts he shares about Y.T. online—her first and last name, city and state, occupation, and employer. He includes images of her face, and uses a photo-editing tool to superimpose her likeness onto images of an airplane. He methodically types pages upon pages of sexual fantasies about Y.T. His posts don't just "happen" in the spur of the moment—they require

significant planning and time. Defendant makes informed, voluntary choices to harm Y.T., underscoring the seriousness of the offense.

Defendant even heard the words of Y.T. at his prior sentencing hearing in 2016 and learned exactly the kind of devastating effect his activities have on her life. This did not stop him from committing the same crime as soon as he had the opportunity. His actions reflect an ongoing disregard for the rule of law and the wellbeing of the victim.

To that end, there is a serious need to protect Y.T. from future crimes by Defendant. Defendant has perpetrated the same offense against Y.T. again and again, bulldozing through a permanent injunction, federal conditions of release, and the admonishments of this Court. No civil lawsuit, federal prosecution, or treatment program has ever deterred Defendant to date. Y.T. has only been safe from Defendant when he is in prison. A sentence of 60 months in Defendant's new case will help protect Y.T. and the public from further criminal conduct.

**B. Defendant should be sentenced to 24 consecutive months for his release revocation.**

Defendant will also be sentenced in Cause No. SA-16-CR-00389-XR for violating the terms of his federal supervised release by stalking Y.T. and failing to attend treatment sessions. In that case, the most serious grade of violation is "B," and Defendant's criminal history category is II, resulting in an advisory range of imprisonment of 6-12 months. The statutory maximum is 24 months of imprisonment and 3 years of supervised release.

Based on Defendant's pattern of violations on supervision, the Court should vary upward to impose the maximum sentence of 24 months, run consecutively to Defendant's new case. *See, e.g.*, *United States v. Whitelaw*, 5:05-cr-00545-XR, 580 F.3d 256, 265 (5th Cir. 2009) (affirming this Court's statutory maximum sentence of 36 months in revocation case, where guideline range was 4-10 months); *see also United States v. Carrillo*, 860 Fed. App'x 72, 74 (5th Cir. 2021) (in

revocation case, affirming upward departure from guideline range of 3-9 months to statutory maximum of 24 months); *United States v. Kippers*, 685 F.3d 491, 500 (5th Cir. 2021) (affirming statutory maximum of 48 months in revocation case, where district court found guideline range of 3-9 months did not adequately reflect the seriousness of the conduct).

Defendant flagrantly disregarded the conditions of his release by re-committing the original cyberstalking crime. This will be his second release revocation, having previously been revoked in part for possessing a computer that contained Y.T.'s nude images. A 24-month sentence is necessary to reflect the severity of Defendant's conduct while under supervision and all the factors described above, including the need to protect Y.T. from Defendant's future crimes.

### III. CONCLUSION

Defendant's obsession with Y.T. has endured three civil lawsuits, a federal prosecution, two prison sentences, and federal supervised release. The only respite Y.T. has from her nightmare is when Defendant is in custody, where he can no longer torment her. Defendant has proven that even under supervision, he will find a way to try to continue destroying Y.T.'s life.

Before being sentenced by this Court in 2016, Defendant told Y.T., ***"I feel that I owe you your life back."*** Nothing can restore Y.T.'s life to what it was before she met Defendant. But one way to try to give Y.T. some semblance of her life back is by ensuring that Defendant cannot revictimize her again, for the longest period possible.

To protect Y.T. from future crimes, deliver just punishment, and capture the seriousness of Defendant's crimes, the United States requests a total sentence of 84 months, by way of a 60-month sentence in Cause No. 21-CR-00084-XR, and a consecutive 24-month sentence in Cause No. 16-CR-00389-XR.

Respectfully submitted,

JAIME ESPARZA
UNITED STATES ATTORNEY

*/s/ William F. Calve*
WILLIAM F. CALVE
Assistant United States Attorney
Texas State Bar No. 24096505
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 384-7132

KARINA O'DANIEL
Assistant United States Attorney
Texas State Bar No. 24083327
601 NW Loop 410, Suite 600
San Antonio, Texas 78216
(210) 970-5356

CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2023, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to Shannon Locke, counsel for Defendant.

*/s/ William F. Calve*
WILLIAM F. CALVE
Assistant United States Attorney