IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | PLAINTIFF |
| VS. | No. 5:21-CR-00084-XR |
| MARK UHLENBROCK | DEFENDANT |

**SENTENCING MEMORANDUM**

\*\*   \*\*   \*\*\*   \*\*   \*\*

The Defendant, Mark Uhlenbrock, by and through undersigned counsel, submits this Sentencing Memorandum setting forth the factors that this Court should consider in determining what sentence is sufficient, but not greater than necessary, to comply with the statutory directives set out in 18 U.S.C. § 3553(a).

**I.**

**Introduction**

Mr. Uhlenbrock is a 69-year-old man who was convicted following a brief jury trial of Internet Stalking in violation of 18 U.S.C. § 2261A(2)(B). The purpose of this Memorandum is not to excuse nor minimize Mr. Uhlenbrock's conduct, but rather to place the circumstances of both the offense and the offender within proper context, so that the Court may impose a sentence which is sufficient, but not greater than necessary, to comply with the statutory sentencing objectives in 18 U.S.C. § 3553(a).

**II.**

**Circumstances of the Offense**

Beginning in 2002, Mr. Uhlenbrock and the complaining witness in this case, Y.T., were involved in a romantic relationship. The pair had met through their work: Y.T. was a flight attendant and Mr. Uhlenbrock was a pilot. During the course of this relationship Y.T. sent to Mr. Uhlenbrock

intimate photos, and Mr. Uhlenbrock took intimate photos of Y.T..[1] At some point, Mr. Uhlenbrock began to upload some of these photos to the internet without Y.T.'s consent or knowledge. She was alerted to his behavior by a colleague, and she subsequently broke things off with him in 2006.

While the relationship between the two ended, Mr. Uhlenbrock's behavior of posting nude images of Y.T. to the internet did not stop. For several years he continued posting images of Y.T. on the internet as well as writing accompanying stories from the perspective of Y.T. She eventually filed a civil lawsuit against Mr. Uhlenbrock in Bexar County, Texas in 2009. The Court issued a consent judgment against Mr. Uhlenbrock in which he agreed to pay more than $100,000 in damages to Y.T., and agreed to stop posting pictures of her online.

Mr. Uhlenbrock continued to post pictures of Y.T. on the internet, and was sued again by Y.T. in 2009. Mr. Uhlenbrock paid damages and agreed to stop posting pictures of Y.T. online once more. However, he continued to engage in this behavior, and was sued a third time in 2011. In the third lawsuit, Mr. Uhlenbrock and Y.T. reached a settlement where he agreed to pay additional damages and agreed to stop posting pictures of Y.T. online.

In 2015, the FBI began to investigate Mr. Uhlenbrock for posting pictures of Y.T. online and discovered that in the summer of 2015, Mr. Uhlenbrock uploaded seven nude images of Y.T. to the internet. The internet protocol address that was associated with those uploads was traced back to Mr. Uhlenbrock.

On August 26, 2015 a federal search warrant was executed at Mr. Uhlenbrock's residence, which resulted in the seizure of two laptops containing nude pictures of Y.T. as well as links and bookmarks indicating that Mr. Uhlenbrock had used those computers to upload nude images of Y.T. to the internet. Mr. Uhlenbrock cooperated with investigators, and admitted to posting the pictures

---

[1] This was generally done with her permission, though there may have been at least one instance where he took a photo of her surreptitiously.

despite being the subject of the multiple civil injunctions and having paid out over $100,000 in damages. He noted that after posting the pictures, he would spend a lot of time tiny got remove the images from sites he posted them to by sending them notices under the Digital Millennium Copyright Act. In the interview with law enforcement, Mr. Uhlenbrock described his behavior as an addiction — that he was excited by the prospect of posting and then removing the images of Y.T.

Mr. Uhlenbrock was subsequently federally indicted,[2] alleging a violation of 18 USC § 2261A(2)(B) — the cyberstalking statute. The case was resolved by plea, and Mr. Uhlenbrock was sentenced to 41-months' incarceration and three years of supervised release on April 3rd, 2019. At sentencing, Mr. Uhlenbrock addressed Y.T., noting that "I owe you an apology. I am sorry. It is not enough. I feel that I owe you your life back. I wish I could go back and help you with that. I think about you and what I have done every waking hour of every day. I more than embarrassed you. I humiliated you. I caused you to be fearful. I have affected your social life. I affected your motivation to go to work. I would like you to know that even though what I did was very mean and for a long time, I did it without malicious intent. I didn't do it to be mean. I didn't do it to be vengeful. It is the terrible nature of my addiction. I have nothing against you. I think you are a very nice woman. I like you."[3]

Subsequent to his custodial term, Mr. Uhlenbrock violated his supervised release by viewing sexually explicit material, having contact with a minor without prior approval, and by failing to answer truthfully about his possession of an internet-enabled computer without prior approval.[4] During the sentencing hearing, the government agreed that what was going to get Mr. Uhlenbrock to stop was

---

[2] *United States v. Uhlenbrock*, 5:16-cr-00389-XR.
[3] Transcript, Case No. 16-cr-00389, DE # 38 at 3-4.
[4] Id., De #54, 2. He was not posting pictures of Y.T. at this point, but stated at the revocation hearing that he was attempting to ensure that he had been successful in taking the prior posts down.

not going to be more jail time, but treatment.[5] The Court revoked his supervised release for six months, and reimposed a new three year supervised release term.[6]

After Mr. Uhlenbrock was released from prison, Y.T. undertook an investigation into whether or not Mr. Uhlenbrock had resumed his posting activities. In the summer of 2020 she discovered that he had resumed making posts and then deleting them. She contacted the FBI with printouts of what she had discovered, noting that "[w]e know that his M.O. is to post this stuff and then delete. This is part of the excitement/fear that he enjoys. Unfortunately for him, I was able to find this stuff before he could find it all and delete it in time." Y.T. also told law enforcement that Mr. Uhlenbrock's posts were using her old name.

Specifically, Y.T. discovered that accounts she knew or believed to be associated with Mr. Uhlenbrock were posting nude images of her to Reddit.com, Imgur.com, and elsewhere using various accounts. Y.T. also discovered several stories that were posted which were written from the first-person perspective — giving the appearance to an outside observer that it was in fact Y.T. who was posting the images and writing the associated stories. The vast majority of these posts do not identify Y.T. textually — that is, while the posts do use images of Y.T., the information posted alongside the images does not appear to identify her (with the exception of one post, where Y.T.'s name is on the image itself). Some of the stories do reference Y.T.'s first name in the content.

Many of the posts that Y.T. had discovered had already been deleted or removed by the time that she sought them out, but of course several had not. Y.T. provided all of this information to the FBI, who in turn served a subpoena on the internet service provider associated with the IP address that made the postings. The information that law enforcement received was that Mr. Uhlenbrock was the subscriber associated with that IP address.

---

[5] Id.
[6] Id.

On December 7th, 2020 an arrest warrant was issued for Mr. Uhlenbrock, which was served on December 10th for a violation of his supervised release and he was subsequently charged in the instant case as well. Mr. Uhlenbrock proceeded to a one-day trial on cyberstalking charges and was convicted.

## III.

## Circumstances of the Defendant

Mark Uhlenbrock was born on March 2, 1954 in St. Louis to Francis and Genevieve Uhlenbrock who raised him. Mr. Uhlenbrock was exposed at a young age to sexual abuse, witnessing his father abuse a sibling for an extended period of time and ended when his father was confronted by other siblings. This early experience undoubtedly had a profound impact on Mr. Uhlenbrock, and helps to place his later conduct and the instant case into context. While Mr. Uhlenbrock's father died in 2010, Mr. Uhlenbrock and his mother enjoy a close relationship still, and prior to his arrest in the instant case would call her daily and visit her two to three times a week. Mr. Uhlenbrock also still has regular contact with most of his siblings. Mr. Uhlenbrock's mother is 98 years old. The Government's request for an 84-month sentence, means that his mother will likely never see Mr. Uhlenbrock again.

## IV.

## Statutory Sentencing Objectives

The primary directive in 18 U.S.C. § 3553(a) is for sentencing courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph two." §3553(a)(2) states that such purposes are:

(a) To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(b) To afford adequate deterrence to criminal conduct;

(c) To protect the public from further crimes of the defendant; and

(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In the instant case, a total sentence of 59 months' imprisonment is sufficient, but not greater than necessary, to comply with these statutory sentencing objectives. This total sentence would include both a sentence of 51 months on the instant case as well as a consecutive sentence of 8 months' imprisonment on Mr. Uhlbenbrock's supervised release violation — essentially the low-end of the guideline range on each case.

While the United States is requesting that the Court impose an upward variance in Mr. Uhlenbrock's case, counsel respectfully suggests that the sentence the government requests is significantly greater than necessary to achieve the statutory sentencing objectives especially when considering that Mr. Uhlenbrock is nearly in his 70's and has a myriad of health complications, including a heart condition for which he received a stent in 2018. As Mr. Uhlenbrock ages, he is undoubtedly going to require increased medical care and will be exposed to an environment where he will be at increased risk for contracting and dying from the COVID-19 virus. In sum, an 84-month sentence for Mr. Uhlenbrock would likely represent a death sentence. Additionally, Mr. Uhlenbrock's whom Mr. Uhlenbrock is very close to is in advanced age and he would like the chance to be able to see her again before she passes — which understandably no one can predict exactly when that would happen, but a sentence of 59 months' imprisonment would give them a better chance to see one another again.

To be sure, Mr. Uhlenbrock was convicted of a serious offense. Similarly, this is not the first time that the Court has had to sentence Mr. Uhlenbrock for this conduct. It stands to reason that a harsher penalty is warranted. Mr. Uhlenbrock was previously given a 41-month sentence of imprisonment. What the government is requesting presently is more than double that previous

sentence, which was the only time that Mr. Uhlenbrock had ever been in prison. A sentence of 59 months is substantially longer than his previous term of incarceration and represents an approximate halfway point between his prior sentence and the government's request. Therefore, it is this sentence that best serves the 18 U.S.C. §3553 factors and the sentence that should be imposed against him.

## V.
## Conclusion

WHEREFORE, counsel respectfully requests that the Court impose a sentence of 59 months' imprisonment as being sufficient, but not greater than necessary, to comply with the statutory sentencing objectives set forth in 18 U.S.C. §3553.

Respectfully submitted,

THE LOCKE LAW GROUP, P.L.L.C.
523 E. Quincy Street
San Antonio, Texas 78215
Ph: 210-229-8300
Fax: 210-2298301

By: <u>Shannon W. Locke //S//</u>
SHANNON W. LOCKE

## CERTIFICATE OF SERVICE

I certify a true and exact copy of the Defendant MARK UHLENBROCK's Motion to Dismiss was served to the U.S. Attorney's office on August 29, 2023 via electronic filing.

<u>Shannon W. Locke //S//</u>